and Ms. Stengel. You may proceed. May it please the court, Jessica Stengel on behalf of Mr. Bradley Morris. The Sixth Amendment guarantees the right to a trial by an impartial jury. If we think of this right as a three-legged stool, each leg plays a role independent of all the others but depends on all three in order to sustain the right. Those three legs are an impartial jury, a group of folks that can decide the case solely on the evidence before it. Another leg of that right is the presumption of innocence. And the third leg of our right to a trial by jury is proof beyond a reasonable doubt. And proof beyond a reasonable doubt plays a vital role. It provides substance, concrete substance to the presumption of innocence and reduces the risk of factual errors being made. Within the context of the jury trial, prosecutors as representatives of the sovereign occupy a unique and elevated space. They are not mere parties to the litigation. They are both administrators of and advocates for justice. Their job is to ensure that justice is done. And justice takes a two-fold appearance. It is both ensuring that the guilty do not escape and that the innocent do not suffer. And jurors have come to expect that prosecutors will discharge these obligations faithfully, consequently. When prosecutors refer to matters not in evidence, misstate the law, misstate the evidence, ask the jury to act as the community conscience, those statements are apt to carry much weight against the accused when they should properly carry none. In rebuttal closing argument in this case, the prosecutor with a single statement managed to eliminate the entire Sixth Amendment right to a jury trial. The prosecution asks the jury, well, what does the U.S. want from Mr. Morris? Well, the United States is asking that Mr. Morris stop sexually abusing his daughter. That's what we're asking today. Looking at that statement more carefully, today implies that the United States has known about this conduct and is ongoing and needs the jury's help to do it. The statement implies that Mr. Morris is not guilty, excuse me, he is not innocent, he is actually guilty and the jury can presume as much. Finally, that statement implies that the evidence can be disregarded, evidence of past conduct, the only purpose for which the jury has been assembled. Instead, the jury can now focus on specific deterrence and decide based on a statement by the government that their job is to prevent a future risk of harm for which only the government knows about. There was no objection to the statement by defense counsel. That is correct. So we're, you know, once again on plain air, you know, what's the best case where, if there is a plain air case where we've, you know, found reversible air, harmless air, harmful air in these circumstances? I think the court can look to two cases quite frankly, the first being Mahorny v. Wallman and that's back in a prior century but it's quite similar on its face and then more recently the court can look to United States v. Starks and I believe that site is 34F41142 but I would have somebody check me on that one. And in Starks, we didn't have nearly as many misstatements but they were just as severe. In Starks, the prosecutor overtly said he's no longer presumed innocent and what the court there did just as the court in Mahorny did is it said, okay, we have multiple misstatements, now some are harmful on their face, some are probably more arguable, let's put them together and see what we have. And we look at the condition and character of the evidence. And in both instances, the evidence was neither overwhelmingly supportive of or discrediting of anybody's statement. And here we have a situation similar to Mahorny, quite frankly, where we have the evidence is two people, the victim, BM, and the accused, Mr. Morris. All the other extrinsic evidence went to support the party's theory of the case. It did not touch or it did not support or discredit either party's testimony. And in that situation, when you have severe misconduct to the extent that it eliminates the Sixth Amendment jury trial, right, this court has found error that is and has reversed. And if there are no further questions, I will reserve my time for rebuttal. Okay. Let's hear from the government. Good morning, Your Honors. My name is Rob Wallace. I'm an assistant United States Attorney in the Muskogee U.S. Attorney's Office. I represent the United States. And as a preliminary matter, I would like to point out that there is a typo in the brief that carries some weight. It's on page 25 in paragraph 2. The Tucker case is cited as a Tenth Circuit case. It is, in fact, a Ninth Circuit case, and it was inaccurately cited, and I apologize for that. The standard we're here on today is a hurdle that Judge Temkevich, you have asserted in Vann in 2015, and that is that there is a very high hurdle when a jury has been properly instructed for prosecutorial misconduct to rise to the level of something that requires reversal. And I would say today that the two-step standard that you have set in that case or that panel set, that the statements must be plainly and proper and they must affect substantial rights, is a significant hurdle. And I would state unequivocally that the government's position is that the statements complained of in the brief are, in fact, not plainly and properly. I'd like to take the statements themselves in the order that the defense presents in their brief and address each of them individually, if I may. First of all, all of the complaints, all the statements that are complained of, were immediately adjacent to instructions from the court, instructions that told the jury that the statements of the attorneys in the case are, in fact, not evidence and that the case must be decided by the jury on the evidence. In the preliminary instructions and in the final instructions prior to the closing, the jury was directed to the evidence in the case and specifically warned not to consider the things that the lawyers said as evidence in the case. They were instructed properly in the law. And the statements complained of occurred in very close proximity to those instructions. The statements specifically in the opening, that's what I'd like to move to first. Council argues in brief that these were improper vouching on behalf of the government. And the complained of statements are statements where the prosecutor was attempting to provide proper evidence in a process of context to the jury. The prosecutor explained to the jury that detail in testimony points to credibility. That is a process statement. The second statement is similar in its nature, that detail lends itself to a credibility finding. The process statements, those first two, the prosecutor actually invokes the first person, which is to be avoided if possible. And it's a mannerism, clear from his argument, his statement, that it's something he fell into accidentally. Wouldn't you say that statement's improper, though? I'm convinced you'll find beyond a reasonable doubt that BM is telling the truth. I mean, isn't that as direct a witness vouching as one could come across? It's my recollection that that's the summary statement at the end of the opening statement. Is that a statement made in the context of, I believe that the detail is an indicator of credibility? It follows that. I believe that that statement is undoubtedly close to the rail, Your Honor. And the fact that he invokes his person in the statement is troublesome. The Corleo case tells us that if that's a mannerism, then it's not necessarily an improper statement. What is a mannerism? A vernacular, something that the lawyer falls into. My style in trial tends to be very folksy, and so there are mannerisms in my speech that are things that are comfortable for me to say, things that might come out without an intentionality. I don't see how a mannerism can . . . I'm just assuming that this was a constitutional violation. I wouldn't think there would be any defense to it that that was just my mannerism and my folksy way of speaking. I think we have to disregard that and just look at what was said. But the statement that you're going to find evidence that is very particular, I mean, if he had said, you're going to see from us evidence that is very particular, and you can consider that in determining how persuasive it is, I don't think anybody would quarrel that that was proper. So then the question is, he went a little bit past that. Is the little bit past it enough to satisfy a clear error test? Respectfully, Your Honor, no. And the reason I would say that, and if I could defend myself on the mannerism for just a second, the Carleo case tells us that it's understandable that in the heat of battle sometimes people will fall into that which is comfortable. And the five of us and most of the people in this room have the ability now to calmly and collectively look at the record as a whole and make decisions. This was . . . these were trial lawyers who were new to the Department of Justice who were in a relaxed, or a less than relaxed setting, I should say. The statement, I believe, is the closest statement to something that is improper. And the I believe goes to the issue of the detail with which they were going to hear from this one witness, as counsel has described. And so, respectfully, no, the line is not crossed when it's not I believe her and you should too. Well, if you look at the definition strictly of vouching, this is a fairly easy case because vouching is a statement either that I have some private information that you don't have which tends to support it, or I am telling you that I know this person and you should believe them. I'm not sure that either of those tests were met, but I don't know that that is the exclusive test by which we have to judge the propriety of these statements. Vouching specifically in the Anaya case was those two statements and also some indication that the prosecutor had information that the jury was not privy to and was arguing something of that nature. Here, in the roadmap he laid out for the evidence, which is how we're instructed to do this, he gave them not only the map of where he was going, and as counsel pointed out in the reply brief, 26 times he said the evidence will show. And then he made a summary statement at the end, which they also complained, giving them the destination he expected the map to point to. And that was, I expect that once you've heard all this evidence, you'll be able to reach a verdict of guilty. In fact, he argued an expectation at that point. Again, statements that do not match the standard the court has previously provided with what is improper. And as a result, we believe the opening statements, the statements made in the opening statement, were not improper. And if they were, did not impact substantial rights. And I will get to the substantial rights piece in just a moment. The rebuttal close, first of all, all of the statements in the rebuttal close are specifically refuting something made in defense counsel's closing argument. Now, we point out it was a very effective closing, very effective defense of the case, where the question of inconsistency in the testimony of the victim and questionable police work came together to form the core of the defense. The first of the closing arguments, the first of the closing arguments, was that the rebuttal close statements, counsel touched on in her three-legged stool analogy, as what is the government going to do? At least three times in the closing, counsel asked that question. What did the government want him to do? What was he to do? What does the government want from Mr. Morris? You can find those in volume one at pages 881 and 884. And the AUSA responds with, stop committing the charge of crime. That's what we expect. It's not an appeal to community conscience. It's not asking the jury not to let this person do this to anyone else. It doesn't seek any action from the jury. It doesn't look to, like any other prohibited statement in the case law supporting that. It is simply an answer to the defendant's question. Well, it's a statement that we want to fix it so that he will never abuse this girl again. The question is... But is that different? I mean, this is a troublesome case to me because it seems like we... I have trouble deciding how that would be different from a statement the government is asking that you find him guilty and let the judge sentence him appropriately. That wouldn't be an inappropriate statement. How is the essence of that, which means we're trying to get him incarcerated, how is that different from... I mean, you're going to agree with this, of course, but I don't know. I mean, in the format of it, I read it and I say I wouldn't have argued it that way. How far does that go in the standard that we have to review in this case as reversible error? Your Honor, I can't disagree. I have a sixth hand along my age now and I've been doing this a long time and I can't tell you that I would have argued this case the way that this AUSA argued it. However, it was within the bounds of perceptible argument in that she was doing exactly what you just described. She was saying, we expect you to convict this defendant. And it was not, we need you to serve as the community's conscience to stop this monster from committing additional acts. It was limited to, we want him not to harm this defendant. It should be self-evident that the government wants you to convict him. We wouldn't have brought the case if we didn't. That is stating just something that everybody knows that in a trial. Yes, Your Honor. I don't disagree with that at all. The additional statements that were made by the AUSA, and I see that my time is running short, each respond to specific arguments that were made. And I can conceive of how this happened mechanically. Notes were being made during the closing and the rebuttal close followed those notes in the way that they were argued. The question of whether or not there was a shift of the burden of proof, there's nothing in the record that indicates that this AUSA lowered the standard at all or shifted the standard at all. She argued against the idea that there was some dearth of evidence in the case by saying counsel has argued that there was inadequate or insufficient evidence and has argued to the jury that the standard could not be met by the simple testimony of the victim. That's not an effort to shift the burden of proof. That's not an effort to lower the standard of what the government had to meet. It was a statement that there is evidence in this record that is sufficient, setting straight an argument that counsel had made. Counsel, could I get you to address substantial rights? Yes, ma'am. In your 58 seconds. Well, and I would do it this way. The word count in the transcript of this case has in it 6,000 words in it. And if you account for the line numbers, the style, and the certificates, we're still somewhere in excess of 80,000 words in the case. And we're arguing about something on the order of 200 words in the case. So in the grand scheme of the case and whether or not this defendant got a fair trial, we're arguing about three-tenths of one percent of what the jury heard in the case. It's hard to say, hard for me to say that the isolated instances that are complained of impacted the fairness of the entire trial. And so that's how I would address that issue. And I see that I'm out of time. Counsel, we have some rebuttals. I do. Just a few points, Your Honors. I'm going to begin with jury instructions. The government's brief, and today they've argued again that jury instructions are sort of the balm to cure all. There are three reasons to reject this approach. First of all, jury, the presumption that we, the jurors follow instructions are just that, a presumption as this court noted in Starks. And the Supreme Court noted in Richardson v. Marks that this is a presumption born out of practicality rather than reality. The second reason is that, yes, the jury was instructed, but the instructions of relevance were that the jurors were not supposed to follow parties' arguments. There was nothing specifically telling juries to ignore misstatements of law. So that error went uncorrected in this trial. And then third of all, if jury instructions really were the panacea, there would never be prosecutorial misconduct. And related to the jury instructions, the government today argues that they were immediately adjacent to all of the misstatements. That is fundamentally incorrect. The jury was instructed there was opening statements. Absolutely. Evidence closed. The jury was instructed. Then the government had its first closing statement. The defense responded. And then finally, we have the government in rebuttal closing arguments where the majority of the misstatements occurred, and arguably the most severe misstatements occurred. And as this court noted in Starks, timing matters. And I would rather quote it, that one of the last things the jury heard before retiring to deliberate the misstatements, one might reasonably have concerns that the timing of this misstatement could magnify its prejudicial effect. And supporting that, the court then in Starks in a footnote says, indeed, empirical research suggests that statements made in closing argument, including as here improper comments or misstatements of law, are likely to have an outsized effect due to their temporal proximity to jury deliberations. Then with regard to the obvious misconduct that occurred in opening statements, the government says now that these are process statements. It did not argue that in its responsive brief. And the fact that these lawyers were new to DOJ is irrelevant to the consideration of prosecutorial misconduct. With regard to closing argument, the government in its brief, and again today, argues that this is, you know, we're allowed to do an eye for an eye type of justice. And the rebuttal closing argument was simply responsive to what defense counsel argued. That approach requires a very myopic view of the record. What really the appropriate unit of analysis should be closing arguments in its entirety. So we look to see what the government argued in closing. And with regard to what Mr. Morris has identified as probably the most harmful statement that the jury needs to protect BM and prevent Mr. Morris from abusing her, the government opened that door in its closing argument. I have it on page 682 of the record. The government says, defendant sat up here and testified this morning. His attorney carefully asked him about each count of the indictment. Did you really count one, count two, count three, count four? Mr. Morris addressed the government's calling him out in his closing argument. And as counsel today noted, it was quite effective. Efficacy of defense closing argument does not allow improper statements, even under this sort of invited error approach. I think it was Justice Brennan said in his concurrence in the United States v. Young, excuse me, that this sort of, this smacks of the sporting theory of justice back in the days when it was plans fighting about who was going to win, win it all. Well, but we're dealing with, I mean, we're dealing with a plain error review here. Is that correct? We are, your honor. And this court has dealt with that many times before. That does change things. I mean, you do say you can't ask whether the defense argument or defense's argument mitigates improper statements by the government. Ordinarily, I would agree with that. But in a plain error question, we have to ask if there was, if it resulted in a substantial question of error that might've affected the outcome. And in considering that, can't we look at the effectiveness of the defense? No, your honor, you can't. Why? Invited error is a very well-known standard of review. I'm not talking about invited error at all. I'm talking about just looking at whether this was prejudicial error. And in terms of prejudicial error, don't we look at, I mean, all the time we say it is or wasn't prejudicial because look at all the other evidence one way or the other. We look at the entire record and the defense's argument is part of that entire record. It is part of the record, but you look at the actual evidence adduced, not argument. And we expect juries to follow that basic instruction as well. And despite 100,000 words, I wouldn't argue that words are not, again, the correct unit of analysis. And I think this court made that clear in Christie where they said, okay, we have plain error. There are misstatements. But let's look at the overwhelming inculpatory evidence. They had over 1,000 pages of testimony from 14 witnesses over six days. And Christie was able to detail the actual inculpatory evidence that went directly to the elements of the crime. Here we have, again, two witnesses and all of the extrinsic evidence, just as it was in Mahorny and just as this court found in Starks, neither supported nor discredited either witness's version of events. However, I think out of an abundance of caution, I think counsel will accept the submission. And it is so. Counsel is excused.